US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
OCT 27 2016
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| **PORFIRIO RODRIGUEZ,** *Plaintiff,* | § § § |
| v. | § § CIVIL ACTION NO.: 16-5307 TLB |
| **WAL-MART STORES, INC.** *Defendant.* | § § JURY DEMANDED § § § |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE U.S. DISTRICT COURT JUDGE:

NOW COMES Porfirio Rodriguez ("Plaintiff") in the above-styled cause, complaining of and about Wal-Mart Stores, Inc. ("Defendant") and for cause of action files this his Plaintiff's Original Complaint, showing to the Court the following:

### I.   PARTIES

1. Plaintiff, Porfirio Rodriguez, is an individual residing in Spring, Harris County, Texas. Plaintiff is a citizen of the United States and the State of Texas. Plaintiff was an employee of Defendant in Bentonville, Arkansas.

2. Defendant, Wal-Mart Stores, Inc., is a for-profit corporation conducting business in Bentonville, Benton County, Arkansas. Defendant was the employer of Plaintiff. Defendant may be served with process through its registered agent: the Corporation Company, located at 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201, via certified mail, return

receipt requested. Plaintiff has filed a request of waiver for summons.

## II.   JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff's cause of action arises under a federal statute, 42 U.S.C. § 12101 *et seq.*, the Americans with Disabilities Act of 1990, as amended ("ADAAA").

4. Venue is proper in the Western District of Arkansas, Fayetteville Division pursuant to 28 U.S.C. § 1391(a) because this is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claim occurred.

5. Plaintiff's counsel has filed a Motion for Leave to Appear *Pro Hac Vice* on behalf of Plaintiff and his application is pending.

## III.   NATURE OF THE ACTION

6. This is an action against Wal-Mart Stores, Inc., for violations of the Americans with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. §§ 12101, *et seq.* Specifically, Plaintiff complains that Defendant discriminated against him on the basis of his disability or the perception of a disability, failed to accommodate his disability, and subsequently retaliated against him after engaging in a protected activity.

## IV.   PROCEDURAL REQUIREMENTS

7. On June 30, 2014, Plaintiff filed his charge of disability discrimination, retaliation, and failure to accommodate with the U.S. Equal Employment Opportunity Commission (Charge No. 451-2015-01059). Thereafter, on July 27, 2016, the U.S. Equal

Employment Opportunity Commission ("EEOC") issued Plaintiff his Notice of Right Sue. Plaintiff received the Notice on July 29, 2016. Ex. A. Plaintiff files thioh yeahs lawsuit within ninety (90) days of receiving his Notice of Right to Sue. Therefore, Plaintiff's suit is filed timely.

### V.    FACTS

8.      Mr. Porfirio Rodriguez began working for Wal-Mart Stores, Inc. ("Wal-Mart") as a Senior Marketing Manager on January 25, 2010. He was heavily recruited by Wal-Mart for six months for this position based on his proven track record at MillerCoors, Mission Foods, and Coca-Cola. Mr. Rodriguez is a highly qualified and highly educated employee. He earned a Bachelor of Liberal Studies undergraduate degree comprised of 1) a Bachelor of Arts in the History and Culture of Spanish-Speaking America, and 2) a Bachelor of Science in International Business (making him uniquely prepared for Hispanic/multicultural marketing). He also completed a Master's of Business Administration in International Business/Marketing. Mr. Rodriguez has more than fifteen years of experience in Multicultural Marketing and was clearly qualified for his position.

9.      During the interview process, Mr. Rodriguez made it very clear to Wal-Mart that he had suffered a brain hemorrhage ten years ago and that he still had medical issues associated with that hemorrhage, known as post-brain hemorrhage Events. He told Tony Rogers that he is blind in one eye and that he has to manage his pain. In fact, at the time Mr. Rodriguez was hired, he used a walking stick and had handicapped parking privileges. He specifically told Mr. Rogers in person during his interview that he needed reassurance from Wal-Mart that he would have long-term disability benefits if he agreed to take the position being offered to him. Mr.

Rodriguez was particularly concerned about the possibility that he would need to go on long-term disability and wanted assurances that his family would be taken care of in the event that happened. Mr. Rogers assured Mr. Rodriguez that Wal-Mart provided long-term disability benefits and that he had nothing to worry about because he would be covered if his medical issues caused a need for it. As such, based on Mr. Rogers' and Wal-Mart's assurances, Mr. Rodriguez accepted the position.

10. Mr. Rodriguez was an exemplary employee and by all accounts excelled in his position. Data at that time demonstrated his success. For instance, a third party assessment showed that his department's spending was more effective and efficient than the entirety of the Marketing Department, which enjoyed a much larger budget and staff. Despite the fact that Mr. Rodriguez was excelling in his position, unfortunately, in 2011, his health began to deteriorate, and his hypertension (a post-brain hemorrhage Event) medication continued to be adjusted until mid-2012.

11. Despite his health issues, Mr. Rodriguez was determined to work and to support his family. Later in February of 2012, Mr. Rodriguez learned that he was going to be transferred to the Marketing Research Department, although he had not made any request to transfer. Despite making it clear to Vice President Mickey Mericle that he was not a researcher and that his experience in that area was limited, he was told that his Marketing experience would be sufficient.

12. In May of 2012, due to the impact of the position change on his disability, Mr. Rodriguez asked for reasonable accommodations in order to learn the new and highly technical subject matter, which involved math calculations and statistical analysis. Although Mr.

Rodriguez could perform his previous job duties of marketing with no accommodations, his new duties as a researcher required him to have accommodations because it posed more of a difficulty given his suffering from post-brain hemorrhage Events that affected his memory and analytical skills. As such, Mr. Rodriguez requested voice recognition software to help capture voice information into text and ensure that he did not miss any information from meetings. However, his very simple request was ignored.

13. Although Mr. Rodriguez had discussed with his supervisors his reticence about the position he had been forced to take, Mr. Rodriguez did the best he could in a bad situation. As part of adjusting to this new researcher position, Mr. Rodriguez asked for seminar training in order to meet the basic qualifications for the position. Instead, Mr. Rodriguez was told to learn from the other researchers as he went along. However, whenever Mr. Rodriguez asked the other researchers for help, they told him that they were not responsible for training him. Mr. Rodriguez tried to get training from others outside the research department and was directed to John Trenhom, who told Mr. Rodriguez that he should not have accepted the researcher position if he knew he was not qualified. However, Mr. Rodriguez was assigned the research position and did not have the option of keeping his previous job.

14. Instead, Mr. Rodriguez subsequently got a poor review and his health deteriorated further due to the stress of his working conditions.

15. Mr. Rodriguez made trips to the Mayo Clinic in early 2012, where MRI's showed that he had recently suffered three strokes (as part of the post-brain hemorrhage Events) and that he suffered from continued brain cell death. In July of 2012, Mr. Rodriguez was subsequently sent to a Mayo pain management rehabilitation clinic to reduce his medication before a

neuropsychological evaluation and took a short-term medical leave from Wal-Mart. He was transferred to the Mayo brain rehabilitation clinic after the evaluation. He returned to Wal-Mart in August of 2012. Shortly thereafter, in October of 2012, he was placed on a Performance Improvement Plan ("PIP") for reasons such as forgetting to do things, which would have been mitigated if Mr. Rodriguez had been given his requested accommodation.

16.  The accelerating stress of his work situation subsequently began to affect his post-brain hemorrhage Events even more. Based on his medical issues, from February of 2012 through October of 2012, Mr. Rodriguez repeatedly asked Wal-Mart for reasonable accommodations, including asking his supervisors to provide him with written notes from meetings and a list of expectations. He also requested voice recognition software to capture notes during meetings and keep reminders of what needed to be completed. However, he was continually put off and his requests went ignored. He was only offered a "research training plan" during the PIP meeting, which involved him purchasing two research textbooks and learning the material on his own. This was a difficult proposition for a person who had suffered a post-brain hemorrhage Event and was supposed to be "documenting and learning" what his deficiencies were.

17.  Mr. Rodriguez initially requested accommodations from his supervisor, Mr. Trenholm. Mr. Trenholm told Mr. Rodriguez that he was new to the position of Director and did not have any knowledge of "that type of thing," and instructed him to go to HR. Mr. Rodriguez then went to HR and spoke to Ms. Keisha Hines-Craft, Wal-Mart's Senior Human Resource Manager. Ms. Hines-Craft told Mr. Rodriguez that any ADAAA accommodations request had to be requested via Wal-Mart's 1-800 number. She also told Mr. Rodriguez that HR was unaware

of his "condition," and that any previous verbal and written requests for accommodations "did not really count." Following this conversation, Ms. Hines-Craft did nothing. Mr. Rodriguez subsequently went to HR numerous times to reiterate his request for reasonable accommodations. Still, HR and Wal-Mart refused to allow his accommodations and essentially ignored him. No person at Wal-Mart ever explained to Mr. Rodriguez why they had ignored his multiple requests for accommodations or why they had refused to accommodate him.

18. During Mr. Rodriguez' semi-annual review, the only one during his employment at Wal-Mart, he made a request to be placed back in his original marketing position. He was told that because he had just been placed on a PIP, he could not be moved back to the position and that he would have to achieve a satisfactory review before any transfer would be considered. Again, he was offered two textbooks to help him learn his new subject matter, despite the fact that his mental deficiencies would make that extremely difficult for him. This dumbfounded Mr. Rodriguez because he had clearly been successful in his previous position and had been told that this research position was only temporary.

19. Gilbert Ramirez then became Mr. Rodriguez' contact person in HR. In September and October of 2012, Mr. Rodriguez brought his request for reasonable accommodations to Mr. Ramirez. Mr. Ramirez claimed that he had no knowledge of any of Mr. Rodriguez' previous requests and told Mr. Rodriguez that it was not necessary to call the 1-800 number for "that sort of thing." Instead, Mr. Ramirez requested detailed information regarding the request. Mr. Rodriguez was relieved by Mr. Ramirez' request because he finally felt like his requests were being given the attention they deserved. Mr. Rodriguez' relief was short-lived, however, because once again, the requests fell on deaf ears and no accommodations were made by Wal-

Mart, nor did anyone ever explain to Mr. Rodriguez why his requests were ignored.

20. On October 22, 2012, Mr. Rodriguez was called into a meeting with Mr. Trenholm and Scott McDoulett. During the meeting, and much to Mr. Rodriguez' utter surprise, Mr. Trenholm and Mr. McDoullett told Mr. Rodriguez that Wal-Mart was requiring him to take long-term medical disability leave. Mr. Trehnholm and Mr. McDoulett encouraged Mr. Rodriguez to use the forced medical leave to "get better." He was told that his "family needed him" and that he should go and "take care of himself." Mr. McDoulette specifically mentioned dealing with "all those drugs" Mr. Rodriguez was taking. This was particularly puzzling to Mr. Rodriguez because he had not revealed to any person at Wal-Mart any information about what drugs he had been prescribed. Mr. Trenholm and Mr. McDoulette also assured Mr. Rodriguez that once he got better, he could come back to work. Subsequently, at the end of October of 2012, Mr. Rodriguez was forced to take FMLA long-term medical disability leave under the insistence of Mr. Trenholm and Mr. McDoulette.

21. In October of 2013, a Wal-Mart HR representative reached out to Mr. Rodriguez about conducting an exit interview. Mr. Rodriguez asked if he was being terminated. The representative told him that he was not being terminated, but that he was just on a leave of absence. Because nothing else was done after this conversation, it was evident that the HR representative was trying to coerce Mr. Rodriguez into resigning. On November 12, 2013, Mr. Ramirez told Mr. Rodriguez that Wal-Mart was terminating his employment. The exit interview states that Mr. Rodriguez was terminated based on his "failure to return from leave of absence," when Wal-Mart was aware of Mr. Rodriguez' need for additional leave, as required by the ADAAA. Wal-Mart simply refused to allow Mr. Rodriguez to return to work based on his

disability and his requests for accommodations.

22. Mr. Rodriguez has now been completely ostracized and his well-being and lifestyle have severely deteriorated. His family has gone from having six-figure annual income to now living on his wife's meager income as a teacher. He is depleting his IRA and had to pay the tax penalty for early withdrawal. His four children took part in a free lunch program for over a year and their grades have suffered. Based on these facts, there is simply no question that Mr. Rodriguez has been discriminated against, refused reasonable accommodations, and been retaliated against by Wal-Mart in violation of the ADAAA.

## VI. COUNTS 1 AND 2: DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE ADAAA

23. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

24. Plaintiff is a qualified individual within the meaning of the ADAAA (42 U.S.C. § 12111(8)).

25. Defendant is an employer and a covered entity under the ADAAA (42 U.S.C. §§ 12111(2), (5)(A)).

26. Plaintiff was an employee of Defendant under the ADA (42 U.S.C. § 12111(4)).

27. Plaintiff suffered from a brain hemorrhage and post-brain hemorrhage Events, including a blind eye, brain cell death, and three documented strokes in mid-2012. As such, Plaintiff suffers from a disability—a physical and mental impairing condition that substantially limits a major life activity, including, working—within the meaning of the ADAAA (42 U.S.C.

§§ 12102(1)(A), 2(A)&(B)).

28. Defendant regarded or perceived Plaintiff as having a disability within the meaning of the ADAAA (42 U.S.C. §§ 12102(1)(C), (3)(A)).

29. Defendant discriminated against Plaintiff on the basis of his disability by discriminating against him in violation of the ADAAA (42 U.S.C. § 12112).

30. Defendant failed to make a good faith effort to assist Plaintiff in making accommodations. Plaintiff requested accommodations from Wal-Mart over and over again, however, no one was willing to help Plaintiff or was able to give him any satisfactory reason for denying his requests.

### VII.   COUNT 3: RETALIATION UNDER THE ADAAA

31. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

32. Defendant retaliated against Plaintiff after he returned from short-term disability by placing him on a Performance Improvement Plan. This retaliation against Plaintiff violated the ADAAA (42 U.S.C. § 12203).

33. Defendant also retaliated against Plaintiff after he was forced to take FMLA long-term medical disability leave under the insistence of Defendant by terminating him shortly thereafter. This retaliation against Plaintiff violated the ADAAA (42 U.S.C. § 12203).

34. As a direct and proximate result of Defendant's intentional retaliatory actions, Plaintiff has suffered severe emotional distress, physical and emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses.

35. As a result of Defendant's intentional retaliatory actions, Plaintiff has suffered and is likely to continue to suffer pecuniary loss, among other things, in the form of lost income in an amount to be determined at trial.

36. Plaintiff has incurred and will continue to incur attorneys' fees, litigation expenses, and costs in pursuing his claims for retaliation under the ADAAA.

## VIII.   JURY DEMAND

37. Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff has submitted the jury demand and herein submits the jury fee.

## IX.   PRAYER

38. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

   a. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or an amendment thereto, including but not limited to lost wages, back and future pay, reinstatement, upgrading, and compensation for benefits not received;

   b. Past physical pain and mental suffering;

   c. Present physical pain and mental suffering;

   d. Future physical pain and mental suffering

   e. Compensatory damages;

   f. Punitive damages in an amount above the minimum jurisdictional limits of the Court;

g.  Reasonable attorneys' fees as allowed by law, with conditional awards in the event of appeal;

h.  Pre-judgment interest at the highest rate permitted by law;

i.  Post-judgment interest from the judgment until paid at the highest rate permitted by law;

j.  Costs of Court; and

k.  Such other and further relief, at law or in equity, including injunctive relief, to which Plaintiff may be entitled, whether by this Original Complaint or by proper amendment thereto.

Respectfully Submitted,

kennard richard P.C.

_____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
2603 Augusta Drive, Suite 1450
Houston, Texas 77057
Phone No. (713) 742-0900
Fax No. (713) 742-0951
Email: alfonso.kennard@kennardlaw.com

**ATTORNEY FOR PLAINTIFF**